**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000480
22-JUL-2026
08:51 AM
Dkt. 94 MO**

NO. CAAP-24-0000480


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


ASSOCIATION OF APARTMENT OWNERS OF KAWAIHAE CRESCENT EAST,
by its Board of Directors, Plaintiff-Appellant,
v.
SCOTT C.H. YANG; KEITH YANG; WELLS FARGO BANK, N.A.;
DISCOVER BANK, a Delaware corporation, Defendants-Appellees, and
JOHN DOES 1-5; JANE DOES 1-5; DOE PARTNERSHIPS 1-5;
DOE CORPORATIONS 1-5; DOE ENTITIES 1-5;
DOE GOVERNMENTAL UNITS 1-5, Defendants-Appellees.

U.S. BANK TRUST, N.A.,
AS TRUSTEE FOR LSF 10 MASTER PARTICIPATION TRUST,
Counterclaimant/Cross-Claimant/Third-Party Plaintiff/
Real Party in Interest-Appellee,
v.
ASSOCIATION OF APARTMENT OWNERS OF KAWAIHAE CRESCENT EAST,
by its Board of Directors, Counterclaim Defendant-Appellant,
v.
SCOTT C.H. YANG; KEITH YANG; DISCOVER BANK,
a Delaware corporation, Cross-Claim Defendants-Appellees,
v.
STATE OF HAWAIʻI CHILD SUPPORT ENFORCEMENT AGENCY,
Third-Party Defendant-Appellee, and
DOES 1 through 20, inclusive, Defendants-Appellees.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CC121000739)


MEMORANDUM OPINION
(By:  Nakasone, Chief Judge, Hiraoka and McCullen, JJ.)

Plaintiff/Counterclaim Defendant-Appellant Association of Apartment Owners of Kawaihae Crescent East (**the Association**) appeals from the Circuit Court of the First Circuit's May 30, 2024 order granting in part Counterclaimant/Cross-Claimant/ Third-Party Plaintiff/Real Party in Interest-Appellee U.S. Bank Trust, N.A., as Trustee for LSF10 Master Participation Trust's (**U.S. Bank**) motion to confirm the foreclosure sale (**May 30, 2024 Order Confirming Foreclosure Sale**), May 30, 2024 Judgment (**2024 Judgment**), and July 18, 2024 order denying the Association's motion for partial reconsideration (**July 18, 2024 Order Denying Reconsideration**).[1]

On appeal, the Association raises five points of error, the gravamen of which being that the circuit court erred when it determined that the Association collected $65,701.37 in

---

[1]  The underlying judicial foreclosure case from which this appeal was taken was initially assigned to the Honorable Bert I. Ayabe.  The case was then reassigned to the Honorable Jeannette H. Castagnetti, effective January 9, 2017.  Finally, the case was reassigned to the Honorable James H. Ashford on January 1, 2024, who entered the May 30, 2024 Order Confirming Foreclosure Sale, the May 30, 2024 Judgment, and the July 18, 2024 Order Denying Reconsideration.

excess rental income and ordered the Association to disburse that amount to the Clerk of Court.[2]  We affirm.

## I.    BACKGROUND

## A.    Factual Background

In March 2008, Defendant/Cross-Claim Defendant-Appellee **Scott** C.H. Yang executed a promissory **Note** for $391,400.00 held by U.S. Bank's predecessor-in-interest.[3]  Scott secured the Note with a **Mortgage** on real property at 486 Kawaihae Street, #486C, Honolulu, Hawaiʻi 96825 (**the Property**) owned by him and Defendant/Cross-Claim Defendant-Appellee Keith

---

[2]  The Association's points of error are presented as follows:

1. "The circuit court erred in the [sic] finding and concluding that the Association collected $65,701.37 in 'excess rental income.'"

2. "The circuit court erred in concluding that the calculation of excess rental income applies to rents received before the senior mortgagee forecloses."

3. "The circuit court erred in entering its [May 30, 2024] Order Confirming [Foreclosure] Sale to the extent that it ordered the Association to disburse any monies to the Clerk of Court."

4. "The circuit court erred in entering its Judgment on the [May 30, 2024] Order Confirming [Foreclosure] Sale."

5. "The circuit court erred in denying [the Association]'s motion for partial reconsideration."

(Formatting altered.)

[3]  The Note was originally held by Wells Fargo Home Mortgage of Hawaiʻi, LLC, who assigned the Mortgage to Wells Fargo Bank, N.A. in March 2008.  Ten years later, Wells Fargo Bank, N.A. assigned the Mortgage to Specialized Loan Servicing LLC in March 2018.  Approximately one year later, Specialized Loan Servicing LLC assigned the Mortgage to U.S. Bank.

Yang (together, **the Yangs**).  The Mortgage was recorded with the State of Hawaiʻi Bureau of Conveyances on March 25, 2008.

In July 2011, for Scott's failure to pay assessments and other charges,[4] the Association placed a statutory lien on the Property and recorded the lien in late September 2011.

In early September 2011, Scott also defaulted under the Note's terms.

B.    **Procedural Background**

1.    **Association's Judicial Foreclosure**

In March 2012, the Association filed a complaint to foreclose on its lien pursuant to Hawaiʻi Revised Statutes (**HRS**) § 514B-146 (Supp. 2012).  The Yangs failed to answer or defend against the complaint, and the clerk of court entered default against them.  The Association moved for summary judgment and an interlocutory decree of foreclosure, which the circuit court granted.

In its 2013 "Findings of Fact, Conclusions of Law and Order Granting [the Association's] Motion for Summary Judgment and Interlocutory Decree of Foreclosure Filed May 7, 2013" (**2013 Order**), the circuit court acknowledged the seniority of the lien held by U.S. Bank's predecessor-in-interest, Wells Fargo Bank, N.A. (**Wells Fargo**):

---

[4]  Yang's unpaid "assessments and other charges" totaled $4,481.58 as of June 21, 2011.

> F. The liens of Defendant WELLS FARGO against the Subject Property <u>are paramount, prior and superior</u> to that of Plaintiff Association's lien.
>
> . . . .
>
> 10. <u>The sale of the Subject Property shall be subject to the liens resulting from the mortgages of Defendant WELLS FARGO</u>. If the purchaser of the Property at the foreclosure sale does not pay off said mortgages in full, including all attorneys' fees and costs, Defendant WELLS FARGO shall have the right to foreclose on their respective mortgage interests.

(Emphases added.) The circuit court contemporaneously entered its judgment (**2013 Judgment**) "pursuant to" its 2013 Order in favor of the Association and against the Yangs.

The circuit court further appointed Deanna S. Hayashida as commissioner (**Commissioner Hayashida**). At auction, Commissioner Hayashida sold the Property to the Association, the highest bidder, for $1,000.00. The Association moved to confirm the foreclosure sale, which the circuit court granted in December 2014.

## 2. Bank's Judicial Foreclosure

Meanwhile, in September 2014, Wells Fargo filed a counterclaim and cross-claim to foreclose on the Mortgage following Scott's September 2011 default on the Note.

In late September and early October 2015, the clerk of court entered default against the Yangs on both the counterclaim and the cross-claim for failure to answer.

In November 2016, Wells Fargo moved for summary judgment and an interlocutory decree of foreclosure. In 2019,

U.S. Bank substituted in as Wells Fargo's real party in interest.

After a significant delay, in February 2023, the circuit court entered a minute order stating that "the only operative pleading still pending in this case" was Wells Fargo's 2014 counterclaim and cross-claim.  Accordingly, the circuit court instructed U.S. Bank, as Wells Fargo's successor-in-interest, to file a pretrial statement.[5]  (Formatting altered.)

In May 2023, U.S. Bank moved for summary judgment, default judgment, and an interlocutory decree of foreclosure, which the circuit court granted in October 2023.

The circuit court reappointed Commissioner Hayashida and instructed the Association to file "a full accounting of all charges, credits (including all rental proceeds collected), and debits related to their ownership of the Mortgaged Property since becoming the owner of the Mortgaged Property on January 13, 2015."  After "repeatedly soliciting for higher bids and receiving none" at the public auction, Commissioner Hayashida sold the Property to the Association for $632,000.00.

In March 2024, U.S. Bank moved for confirmation of the foreclosure sale and entry of an order directing the Association "to disburse any excess rental proceeds consistent with" the

---

[5]  The circuit court further noted that, "since being substituted in as counter/cross-complainant in 2019, [U.S. Bank] ha[d] not requested any pretrial statement deadline filing extensions."  (Formatting altered.)

Hawai'i Supreme Court's ruling in <u>Nationstar Mortgage, LLC v. Association of Apartment Owners of Elima Lani Condominiums</u> (<u>Elima Lani</u>), 152 Hawai'i 406, 526 P.3d 383 (2023).

The Association opposed U.S. Bank's motion, arguing it was entitled to retain up to $162,890.27 of the $230,792.90 it collected in rental income since taking possession of the Property. Reading HRS § 514B-146(n) (2018) together with <u>Elima Lani</u>, the Association asserted that, "in the event that total rental proceeds exceed the enumerated expenses and deductions [set forth in HRS § 514B-146(n)], the Association is not entitled to rents accruing <u>after the lender's foreclosure</u>. [<u>Elima Lani</u>] says nothing about returning rental proceeds it received prior to the foreclosure."

The Association calculated the reimbursement amounts allowable under HRS § 514B-146(n)(1)-(4) as totaling $169,940.27. Contending that "rental income only becomes 'excess rental income' once it crosses above $169,940.27," and that the Association "only collected $7,050.00 in rental income during the time period specified in HRS § 514B-146(n)," the Association argued it was entitled to retain "rental income . . . up to $162,890.27."[6]

---

[6] $169,940.27 - $7,050.00 = $162,890.27.

The circuit court confirmed the foreclosure sale without any objections.  Then, it reduced the Association's requested attorneys' fees from $9,848.74 to $5,000.00, making the adjusted reimbursement total $165,091.53.[7]

---

[7]  The adjusted reimbursement total of $165,091.53 is the sum of the subtotals for each HRS § 514B-146(n)(1)-(4) category:

| HRS § 514B-146(n) Category | Amount |
|---|---|
| (1) The lien for delinquent assessments pursuant to subsections (a) and (b); and/or<br><br>(2) Any maintenance fee delinquency against the unit; | $24,390.47 |
| (3) Attorney's fees and other collection costs related to the association's foreclosure of the unit; | $8,086.07 |
| (4) Any costs incurred by the association for the rental, repair, maintenance, or rehabilitation of the unit while the association is in possession of the unit including monthly association maintenance fees, management fees, real estate commissions, cleaning and repair expenses for the unit, and general excise taxes paid on rental income. | $70,097.85 (Association Maintenance Fees)<br><br>$46,642.18 (Management and Repair Costs)<br><br>$5,000.00 (Reduced Attorneys' Fees Incurred After the Association Took Possession of the Unit)<br><br>$10,874.96 (General Excise Tax Paid on Rental Income) |
| **Total** | **$165,091.53** |

$169,940.27 - ($9,848.74 - $5,000.00) = $165,091.53.

8

Turning to the excess rental proceeds issue, the circuit court explained it interpreted Elima Lani "differently" than the Association. According to the circuit court, the Hawaiʻi Supreme Court in Elima Lani "stated that excess rental proceeds [are], quote, income collected by an association above and beyond what it was owed by the prior owners and the cost it incurred." Applied to the instant case, the circuit court determined that, "after paying the [Association] $165,091.53 of the $230,792.90 in proceeds, the remaining balance . . . is $65,701.37."

> In other words, the Court's saying that of the $169,940.27 the [Association] claims it should be paid for maintenance fees, property management expenses, attorneys' fees and [general excise tax], the Court is reducing the attorney fee request by $4,848.74.
>
> . . . .
>
> So after paying the [Association] $165,091.53 of the $230,792.90 in proceeds, the remaining balance . . . is $65,701.37.

And "that amount, the [$]65,701.37, is excess rental proceeds which must be deposited with the clerk of court within two weeks after the entry of the confirmation order."

To that effect, and as relevant to this appeal, the circuit court entered the following challenged findings of fact (**FOF**) and conclusions of law (**COL**) in its May 30, 2024 Order Confirming Foreclosure Sale:

[FOF] 11. The Court finds that out of the $230,792.90 in gross rental proceeds the [Association] has collected since ownership of the Mortgaged Property, the [Association] has collected $65,701.37 in excess rental proceeds as defined in [HRS] §514B-146(n), which shall be disbursed to the Clerk of the Court of the First Circuit, State of [Hawaiʻi] within two weeks from the entry of this Order. U.S. Bank, along with any party to this action may file its motion for disbursement of said excess rental proceeds. The [Association] is not seeking a special assessment against the purchaser.

. . . .

[COL] 5. The Court hereby rules that [the Association] must disburse $65,701.37 in excess rental income collected from the time that the [Association] obtained record ownership of the Mortgaged Property on January 13, 2015, which the [Association] shall disburse the full $65,701.37 to the Clerk of the Court of the First Circuit, State of [Hawaiʻi] within two weeks from the entry of this Order.

. . . .

[COL] 9. From the $230,792.92 in gross rental proceeds collected by the [Association], the [Association] is entitled to deduct $165,091.53 in expenses, fees, and other charges pursuant to [HRS] § 514B-146(n)(1)-(4), which includes the reduced attorneys' fees of $5,000.00.

[COL] 10. As such, the [Association] has collected excess rental proceeds of $65,701.37, which shall be disbursed to the Clerk of the Court of the First Circuit, State of [Hawaiʻi] within two weeks from the entry of this Order.

In June 2024, the Association moved for partial reconsideration of the May 30, 2024 Order Confirming Foreclosure Sale, which the circuit court denied in its July 18, 2024 Order Denying Reconsideration.

The Association timely appealed.

## II. DISCUSSION

On appeal, the Association challenges the circuit court's determination that the Association collected $65,701.37

10

in excess rental income. In particular, the Association asserts that, under Elima Lani, HRS § 514B-146(n) "only concerns the time period after the summary judgment granting the senior mortgagee's foreclosure" and "does not impact the Association's property rights as owner of the unit prior to the senior mortgagee's foreclosure[.]"

We start with the plain language of HRS § 514B-146(n). See, e.g., In re Maui Fire Cases, 155 Hawaiʻi 409, 424-25, 565 P.3d 754, 769-70 (2025) (quoting State v. Wheeler, 121 Hawaiʻi 383, 390, 219 P.3d 1170, 1177 (2009)). HRS § 514B-146(n) sets forth "a scheme for distributing rents following a lender's foreclosure against an association" where the association previously foreclosed against the unit owner. Elima Lani, 152 Hawaiʻi at 408, 526 P.3d at 385. HRS § 514B-146(n) provides in full:

> (n) After any judicial or nonjudicial foreclosure proceeding in which the association acquires title to the unit, any excess rental income received by the association from the unit shall be paid to existing lien holders based on the priority of lien, and not on a pro rata basis, and shall be applied to the benefit of the unit owner. For purposes of this subsection, excess rental income shall be any net income received by the association after a court has issued a final judgment determining the priority of a senior mortgagee and after paying, crediting, or reimbursing the association or a third party for:
>
> (1) The lien for delinquent assessments pursuant to subsections (a) and (b);
>
> (2) Any maintenance fee delinquency against the unit;

11

> (3)     Attorney's fees and other collection costs
>         related to the association's foreclosure of the
>         unit; or
>
> (4)     Any costs incurred by the association for the
>         rental, repair, maintenance, or rehabilitation
>         of the unit while the association is in
>         possession of the unit including monthly
>         association maintenance fees, management fees,
>         real estate commissions, cleaning and repair
>         expenses for the unit, and general excise taxes
>         paid on rental income;
>
> provided that the lien for delinquent assessments under
> paragraph (1) shall be paid, credited, or reimbursed first.

(Emphasis added.)

"The association must account for all rents from the time it foreclosed on the property." Elima Lani, 152 Hawaiʻi at 416, 526 P.3d at 393.

"Questions of statutory interpretation are questions of law to be reviewed de novo under the right/wrong standard." Lingle v. Hawaiʻi Gov't Emps. Ass'n, AFSCME, Loc. 152, AFL-CIO, 107 Hawaiʻi 178, 183, 111 P.3d 587, 592 (2005). We review foreclosure actions for an abuse of discretion. Peak Cap. Grp., LLC v. Perez, 141 Hawaiʻi 160, 172, 407 P.3d 116, 128 (2017) (citation omitted).

Here, the circuit court determined the priority of U.S. Bank's mortgage in its 2013 Order and entered its 2013 Judgment pursuant to that order. Because the 2013 Judgment first determined the priority of U.S. Bank's mortgage, HRS § 514B-146(n) required the circuit court to look to the entry of the 2013 Judgment to calculate "excess rental income". See

Elima Lani, 152 Hawai'i at 416, 526 P.3d at 393.  In other words, under the circumstances of this case, excess rental income includes that income the Association received after the circuit court's 2013 Judgment because the 2013 Judgment first determined the priority of U.S. Bank's mortgage.  See HRS § 514B-146(n) ("For purposes of this subsection, excess rental income shall be any net income received by the association after a court has issued a final judgment determining the priority of a senior mortgagee.").

The Association's reliance on Elima Lani for the proposition that HRS § 514B-146(n) "does not impact the Association's property rights as owner of the unit prior to the senior mortgagee's foreclosure" is misguided.

In Elima Lani, the association conducted a nonjudicial foreclosure.  152 Hawai'i at 408, 526 P.3d at 385.  There, unlike here, the judgment that determined the mortgagee's priority was also the judgment entered on the mortgagee's foreclosure.  Id. at 409, 526 P.3d at 386.  Thus, the court in Elima Lani did not have the opportunity to examine HRS § 514B-146(n) under the circumstances present in this case because, here, the senior mortgagee's priority was first determined in the 2013 Judgment disposing of the Association's foreclosure.

13

The plain language of HRS § 514B-146(n) does not limit the determination of excess rental income to after a senior mortgagee's foreclosure judgment. HRS § 514B-146(n) states that "excess rental income shall be any net income received by the association <u>after a court has issued a final judgment determining the priority of a senior mortgagee</u>." (Emphasis added.) Nothing in this language requires the judgment be the senior mortgagee's foreclosure judgment. Instead, it requires the issuance of a "final judgment [that] determine[es] the priority of a senior mortgagee," which in this case was the 2013 Judgment. See id.

Our interpretation of HRS § 514B-146(n) aligns with the intent of the legislature. See <u>Elima Lani</u>, 152 Hawaiʻi at 416, 526 P.3d at 393. As the supreme court has explained, "the legislature intended for a foreclosing association to be able to collect what it was due and no more; hence, the association is to receive all rents short of 'excess rental income.'" <u>Id.</u> "Excess rental income is income collected by an association above and beyond what it was owed by the prior owners and the costs it incurred. There is no reason for the association to retain this amount while a mortgagee goes unpaid." <u>Id.</u> (citation modified).

14

Under the Association's interpretation of HRS § 514B-146(n), only $7,050.00 of the $230,792.90 in rent collected would fall under the purview of HRS § 514B-146(n) because only $7,050.00 of rent was collected after the entry of 2024 Judgment relating to U.S. Bank's foreclosure. The Association, however, fails to recognize that the 2013 Judgment regarding its own foreclosure had already determined the priority of U.S. Bank's lien as the senior mortgagee.

Accordingly, under the circumstances of this case, the circuit court did not abuse its discretion when it declined to limit the calculation of excess rental income to rents the Association received after the entry of the 2024 Judgment on U.S. Bank's foreclosure. See Peak, 141 Hawaiʻi at 172, 407 P.3d at 128.

Additionally, because the Association did not assert new evidence or arguments in its motion for reconsideration, the circuit court did not abuse its discretion by entering its July 18, 2024 Order Denying Reconsideration. See Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawaiʻi 97, 110, 58 P.3d 608, 621 (2002) ("Reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the

earlier proceeding."  (Quoting <u>Sousaris v. Miller</u>, 92 Hawai'i 505, 513, 993 P.2d 539, 547 (2000)).

### III.  CONCLUSION

Based on the foregoing, we affirm the circuit court's May 30, 2024 Order Confirming Foreclosure Sale, 2024 Judgment, and July 18, 2024 Order Denying Reconsideration.

DATED:  Honolulu, Hawai'i, July 22, 2026.

On the briefs:

Kapono F.H. Kiakona,
Dallas H. Walker,
(Porter Kiakona Kopper),
for Plaintiff/Counterclaim
Defendant-Appellant.

Leila M. Rothwell,
Justin S. Moyer,
(Aldridge Pite),
for Counterclaimant/Cross-
Claimant/Third-Party
Plaintiff/Real Party in
Interest-Appellee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge